IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>vs.<br>MERRIDETH JUNE CRANE-HORTON,<br>    Defendant. | No. 1:10-cr-00026–JEG-CFB<br><br>O R D E R |

Before the Court is a pro se motion filed by Defendant Merrideth June Crane-Horton, ECF No. 330. The Court construes the pleading as a Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) and as a request for emergency release under the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). Assistant U.S. Attorney Shelly Sudmann filed a brief in resistance to the motion. Defendant filed a Reply, ECF No. 335, and two supplements, ECF Nos. 337 and 338. The matter is ready for disposition.

**I.   BACKGROUND**

**A.  Factual Background**

On July 1, 2010, the Grand Jury issued a superseding indictment charging Defendant with Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. § 1594(c) (Count 1); Engaging in and Attempting to Engage in Sex Trafficking, in violation of 18 U.S.C. §§ 1591(a)(1), 1594(a), 2, 1591(b)(1), and 1591(b)(2) (Counts 2 and 4); Interstate Transportation for Prostitution, in violation of 18 U.S.C. §§ 2421 and 2 (Counts 3 and 5); Use of the Internet in Aid of Unlawful Activity, in violation of 18 U.S.C. § 1952(a)(3)(A) (Count 6); Use of the Telephone/Cell Phone in Aid of Unlawful Activity, in violation of 18 U.S.C. §§ 1952(a)(3)(A) and 2 (Counts 7 and 8); Attempt to Financially Benefit from Sex Trafficking, in violation of 18 U.S.C. §§ 1591(a)(2), 1591(b)(1), 1591(b)(2), and 1594(a) (Count 9); and Interference with Commerce by Robbery and Attempted Extortion, in violation of 18 U.S.C. § 1951(a) (Count 10). On October 21, 2010, Defendant pleaded guilty to Conspiracy to Commit Sex Trafficking (Count 1),

pursuant to a written plea agreement. Under the terms of the plea agreement, the Government agreed to recommend sentencing considerations to the Court, including that Defendant would plead guilty to Count 1 and the Government would dismiss Counts 2-10 at the time of sentencing; Defendant agreed to waive her right to appeal her conviction or to contest her conviction or sentence in post-conviction proceedings but retained the right to appeal her sentence, to the extent authorized by law, and to seek post-conviction relief based on ineffective assistance of counsel or prosecutorial misconduct. On February 7, 2011, the Court sentenced Defendant to a 210-month term of imprisonment and a 5-year term of supervised release. Defendant's sentence was affirmed on appeal. See United States v. Crane-Horton, 449 F. App'x 557 (8th Circ. 2012) (unpublished per curiam).

### B. Procedural Background

Defendant moves for compassionate release, pursuant to the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239–40, which amended 18 U.S.C. § 3582(c)(1)(A)(i) and seeks immediate release from prison due to the COVID-19 pandemic. Defendant alleges she has health conditions that put her at a significant risk for more severe and life-threatening conditions being exposed to COVID-19, including severe morbid obesity, asthma, hypothyroidism, sleep apnea, Bipolar 1 disorder, post-traumatic stress disorder, and phobic anxiety disorder. Def.'s Mot. 2–3, 15, ECF No. 330. In a supplemental filing Defendant adds an additional condition of diabetes, ECF No. 338, based upon a new medical record that reflects an A1C test that showed a reading of 6.1, which is in the diabetic range and was a new result as of February 8, 2022. Suppl. Med. R. 21, ECF No. 338-1. Defendant asserts her health conditions make self-care within the BOP facility difficult, id. at 3, and alleges the BOP is unable to control the spread of the COVID-19 virus within the facility, id. at 13-15. Defendant states she has already contracted COVID-19 and now suffers from "long COVID" symptoms. Id. at 16. Defendant asserts she has exhausted her administrative remedies for compassionate release as she submitted a request to the warden at her facility, the warden denied her request, and more than thirty days have

passed. Id. at 20. Defendant claims the 18 U.S.C. § 3553(a) sentencing factors warrant her early release, arguing the time she has served reflects the seriousness of the offense and would not undermine the goals of the original sentencing.

The Government resists, arguing Defendant has been vaccinated and therefore does not present an extraordinary and compelling reason for compassionate release, she remains a danger to the community, and early release is inconsistent with the § 3553(a) sentencing factors. Gov't Resp. 1, ECF No. 334. The Government argues that the BOP records indicate that since contracting COVID, Defendant has not reported any ongoing complications or medical issues other than needing an inhaler more often and having nightmares, and further asserts Defendant's reported medical issues appear well controlled with medication and treatment provided by the institution and that she is fully ambulatory and engages in all normal activities of daily living. Id. at 4. The Government argues the BOP has taken measures to mitigate the risk of transmission of COVID-19 within its facilities, id. at 4-6, and the facility has addressed Defendant's medical concerns after she contracted the virus, id. at 13. The Government argues that Defendant has been fully vaccinated, precluding her eligibility for compassionate release. Id. at 14. The Government argues that Defendant has failed to demonstrate how her release reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. Id. at 20.

The Government acknowledges Defendant filed a request with the warden for release based upon medical conditions and COVID-19 and that the warden denied the application. Id. at 3. The request and denial are attached as Exhibits 1 and 2 to the Government's response. ECF Nos. 334-1 & 334-2. Defendant's medical records are attached as Exhibit 3 to the Government's response. ECF No. 334-3. Defendant provided medical records with her initial motion and her supplement. ECF Nos. 330-1 and 338-1.

Defendant is currently housed at Carswell Federal Medical Center (FMC) in Texas. Defendant's current release date is December 19, 2024.  Fed. BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited April 7, 2022).

## II.   DISCUSSION

### A.  COVID-19

COVID-19 is a disease caused by a novel coronavirus that was first detected in late 2019 and declared a pandemic by the World Health Organization (WHO) on March 11, 2020.  WHO, Novel Coronavirus (2019-nCoV) Situation Report-51, 11 March 2020, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/situation-reports (last visited April 7, 2022).  On March 26, 2020, due to the heightened risk posed by COVID-19, then-Attorney General William Barr issued a memorandum to the Director of the Bureau of Prisons instructing that "when assessing compassionate release applications, to prioritize the transfer of incarcerated inmates to home confinement 'where appropriate' to decrease the risks to their health."  Memorandum for Director of Bureau [of] Prisons from the Attorney General, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (March 26, 2020), accessed at https://www.justice.gov/file/1262731/download.  Since March 26, 2020, in response to the Attorney General's memorandum, the BOP has implemented modified operations at its facilities to mitigate the spread of COVID-19, Fed. BOP, BOP Implementing Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited April 7, 2022), and has placed 40,462 inmates, including defendants sentenced by this Court, on home confinement, Fed. BOP, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp (last visited April 7, 2022).  As of April 2022, the BOP had administered over 310,079 total doses of the COVID-19 vaccine to inmates and staff.  BOP, COVID-19 Vaccination Implementation, https://www.bop.gov/coronavirus/index.jsp (last visited April 7, 2022).

**B. First Step Act**

After sentence has been imposed, the Court's ability to modify a sentence is significantly limited. "Section 3582(c)(1)(A)(i) requires [the defendant] to demonstrate extraordinary and compelling circumstances warranting her release." United States v. Hampton, 985 F.3d 530, 533 (6th Cir. 2021).

Title 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes the Court to modify a sentence based on "compassionate release." The statute, in relevant part, provides:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) In any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction; or
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offense for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

§ 3582(c)(1)(A). Prior to the First Step Act amendments to § 3582(c)(1)(A), only the Director of the BOP could seek compassionate release on behalf of a federal inmate. Compare § 3582(c)(1)(A) (2002) ("[T]he court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment . . . ."), with § 3582(c)(1)(A) (2018) ("[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant . . . may reduce the term of imprisonment.").

**1. Exhaustion of Administrative Remedies**

Although the district court may now consider defendants' motions for compassionate relief under the current version of § 3582(c)(1)(A), defendants must first fully exhaust administrative remedies before seeking judicial relief. § 3582(c)(1)(A) (2018). A defendant has satisfied the exhaustion requirement when the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id.; see United States v. Houck, 2 F.4th 1082, 1082–84 (8th Cir. 2021). "This requirement is a mandatory claim-processing rule." Houck, 2 F.4th at 1084 (citing United States v. Alam, 960 F.3d 831, 832–33 (6th Cir. 2020)). "As such, it must be enforced so long as the opposing party properly raises it." Id.; see United States v. Sanford, 986 F.3d 779, 782 (7th Cir. 2021) (joining other circuits in concluding the statutory exhaustion requirements of § 3582(c)(2) are non-jurisdictional procedural rules, which once invoked must be enforced); United States v. Franco, 973 F.3d 465, 468 (5th Cir.) (same), cert. denied, No. 20-5997 (U.S. Dec. 7, 2020); United States v. Springer, 820 F. App'x 788, 792 (10th Cir. 2020) (unpublished order) (same); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (same). If the Government raises the exhaustion issue and the defendant "failed to exhaust his administrative remedies prior to filing the motion, the district court [i]s required to dismiss [the defendant]'s motion without prejudice. Houck, 2 F.4th at 1084.

The record reflects Defendant made the necessary request to the Warden, ECF No. 334-1, and that request was denied, ECF No. 334-2. The Government concedes Defendant has exhausted administrative remedies.

**2. Extraordinary and Compelling Reasons Under § 3582(c)(1)(A)**

In considering a motion for reduction of sentence under § 3582(c)(1)(A), the first statutory requirement the court must consider is whether "extraordinary and compelling reasons warrant such a reduction[.]" United States v. Ruffin, 978 F.3d 1000, 1004 (6th Cir. 2020) (alterations in

original) (quoting § 3582(c)(1)(A)(i)). Although Congress did not define what constitutes "extraordinary and compelling" under § 3582, Congress charged the U.S. Sentencing Commission with "promulgating general policy statements regarding the sentencing modification provisions in [§ 3582(c)(1)(A)]," which "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress noted, however, that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Section 1B1.13 of the U.S. Sentencing Guidelines is the Commission's policy statement, and provides that the court *may* reduce a term of imprisonment if it determines that: (1) extraordinary and compelling reasons warrant the reduction or the defendant is 70 years or older and has served at least 30 years in prison; (2) the defendant is not a danger to the safety of any other person or to the community; and (3) the reduction is consistent with this policy statement. Section 1B1.13 further provides that the Court should "consider[] the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable."

Application Note 1 to § 1B1.13 identifies extraordinary and compelling reasons: the first three relate to the defendant's health, age, or family circumstance and the fourth is a catchall.[1]

---

[1] Application Note 1 to § 1B1.13 provides:

[E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:
(A) Medical Condition of the Defendant.—
   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
   (ii) The defendant is—
      (I) suffering from a serious physical or medical condition.
      (II) suffering from a serious functional or cognitive impairment, or
      (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

However, the U.S. Sentencing Commission has yet to update § 1B1.13 following the passage of the 2018 amendment to § 3582(c)(1)(A).  See, e.g., United States v. Rodd, 966 F.3d 740, 747 (8th Cir. 2020) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines [U.S.S.G.], it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future." (second alteration in original) (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019))).

The Eighth Circuit has declined to engage in the "academic debate" on the applicability of § 1B1.13 to motions brought in district court by defendants pursuant to § 3582(c)(1)(A), and instead reviews whether the district court recognized its broad discretion in considering defendants' motions for compassionate release and did not treat § 1B1.13 as binding.  United States v. Marcussen, 15 F.4th 855, 859 (8th Cir. 2021) ("So long as a district court does not explicitly limit its discretion to the factors identified in U.S.S.G. § 1B1.13 and its commentary, it is appropriate for this court to ignore what is, in substance, no more than an academic debate. . . . [T]he district court properly looked to this commentary as relevant but not binding in determining that [the defendant]'s health conditions at the time he requested a § 3582(c)(1)(A)(i) sentence reduction were not 'extraordinary and compelling reasons' warranting a reduction.  The First Step Act required no more."); see also United States v. Gater, 857 F. App'x 259, 261 (8th Cir. 2021)

---

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
(C) Family Circumstances.—
    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

(unpublished per curiam) ("We need not decide whether the statute supersedes the list of circumstances set forth in the policy statement. Here, the district court's reference to consideration of the § 3553(a) factors and its examination of [the defendant]'s claims regarding the COVID-19 pandemic make plain that it did not limit its analysis to only those circumstances listed in the commentary to U.S.S.G. § 1B1.13."); United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021) ("The parties agree that the policy statement in U.S.S.G. § 1B1.13 continues to apply to compassionate-release motions filed after the passage of the First Step Act. We assume, without deciding, that it does." (citing Rodd, 966 F.3d at 747)); see also United States v. Burton, 845 F. App'x 97, 99 (3d Cir. 2021) (unpublished per curiam).[2] The Court concludes that although not bound by or limited to consideration of § 1B1.13, that section provides helpful guidance in determining whether Defendant has articulated an extraordinary or compelling reason for release. Accord Gater, 857 F. App'x at 261 ("The substance of the district court's order demonstrates that the court found [the defendant] did not have any 'major' medical issues and the mere possibility of contracting COVID-19 in prison, alone, without a showing that the BOP is unwilling or unable to guard against or treat the infection does not meet the extraordinary or compelling

---

[2] Several Courts of Appeals have held § 1B1.13 is not applicable to motions for compassionate release filed in district court by defendants after exhausting administrative remedies with the BOP. See, e.g., United States v. Brooker, 976 F.3d 228, 235–36 (2d Cir. 2020) ("Turning to the text of Guideline § 1B1.13, it is manifest that its language is clearly outdated and cannot be fully applicable. The very first words of the Guideline are '[u]pon motion of the Director of the Bureau of Prisons.' . . . [T]hough motions by the BOP still remain under the First Step Act, they are no longer exclusive, and we read the Guideline as surviving, but now applying only to those motions that the BOP has made." (first alteration in original) (quoting § 1B1.13)); United States v. Long, 997 F.3d 342, 354 (D.C. Cir. 2021) (similar); United States v. Maumau, 993 F.3d 821, 836 (10th Cir. 2021) (similar); United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) (similar); United States v. Shkambi, 993 F.3d 388, 393 (5th Cir. 2021); United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021) (similar); United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020) (similar); United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (similar). The Eleventh Circuit, on the other hand, "h[e]ld that 1B1.13 is an applicable policy statement that governs all motions under Section 3582(c)(1)(A)." United States v. Bryant, 996 F.3d 1243, 1262 (11th Cir. 2021).

standard to warrant a sentence reduction.  We find neither a misapplication of § 3582(c)(1)(A), nor an abuse of discretion.").

Listing several medical conditions, Defendant argues she is uniquely susceptible to COVID-19 and its effects.  Both Defendant and the Government submitted medical records for the Court's review in connection with the motion.  Those records do support that Defendant is dealing with various health issues:  those include morbid obesity, ECF No. 330-1 at 21; 334-3 at 2, 8 and 9 (BMI 49); ECF No. 338-1 at 5 and 21; asthma, ECF No. 334-3 at 2, 7 and 39; ECF No. 338-1 at 1; hypothyroidism, ECF No. 334-3 at 2, 39, 59; ECF No. 338-1 at 13; sleep apnea, ECF No. 334-3 at 7, 39 and 59; bipolar 1, ECF No. 330-1 at 23; ECF No. 334-3 at 30; Post-traumatic Stress Disorder, ECF No. 334-3 at 59; ECF No. 338-1 at 13; phobic anxiety, ECF No. 334-3 at 2; ECF No 338-1 at 13, and recently diagnosed diabetic range, ECF No. 338-1 at 13 and 21.  These records also reflect Defendant is receiving regular treatment for all of these conditions at Federal Medical Center and appears to be functioning in the prison environment.  Her asthma and hypothyroidism are of long-standing since prior to her sentencing.  Pre-sentence Investigation Report, ECF No. 162 at 18.

Defendant did contract COVID-19 in July 2020, and apparently had recovered by August of that year, though Defendant asserts some continuing symptoms she relates to the virus.  ECF No. 330-1 at 27; ECF No. 334-3 at 61; ECF No. 338-1 at 1.  She then received the Pfizer vaccine for COVID-19 on December 19, 2020 and January 5, 2021.  ECF No. 334-3 at 103-04.  Along with having recovered from the virus, Defendant's responsible decision to be vaccinated against COVID-19 provides her with substantial protection. See, e.g., United States v. Groom, Case No. 17-cr-159, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021); United States v. Williams, Criminal No. 16-251, 2021 WL 1087692, at *3 (D. Minn. Mar. 22, 2021); United States v. Burks, Crim. No. 11-369(4), 2021 WL 1291935, at *2 (D. Minn. Apr. 7, 2021).  An increasing number of courts have found full vaccination undermines a claim for compassionate release based on exposure to the virus.  See, e.g., United States v. Fowler, No. 21-5769, 2022 WL 35591

at *2 (6th Cir. Jan. 4, 2022); United States v. Lemons, 15 F.4th 747, 749, 751 (6th Cir. 2021); United States v. Smith, Case No. 17-CR-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021).

Defendant does not assert the BOP has failed to adequately treat her documented conditions but asserts there are inadequate precautions to prevent the spread of COVID-19 in her facility.

On this record, the Court must conclude Defendant is not suffering from a terminal illness or a serious medical condition from which she is not expected to recover; nor is she suffering from a serious physical or medical condition, functional or cognitive impairment, or age-related deterioration that substantially diminishes her ability to provide self-care within the correctional facility environment. See, e.g., United States v. Rogers, 18 CR 270, 2020 WL 3170881, at *2 (S.D.N.Y. June 15, 2020) (denying the defendant's argument for compassionate release that having had a stroke, high blood pressure, and moderate kidney disease made him particularly vulnerable to COVID-19, reasoning although the defendant did not have particularly good health, he did "not fall into that narrow band of inmates whose poor health overrides all other concerns, establishing an extraordinary and compelling reason to grant release" under § 1B1.13).

Defendant is housed at Carswell FMC, which currently houses 1,206 total inmates. Fed. BOP, Locations, https://www.bop.gov/locations/institutions/crw/ (last visited April 7, 2022). According to the BOP Coronavirus Resource Page, no inmates and no staff at Carswell currently tested positive for the virus. Fed. BOP, COVID-19 Coronavirus Resource Page, https://www.bop.gov/coronavirus/ (last visited April 7, 2022). In accord with its COVID-19 Vaccine Implementation policy, the BOP has made the vaccine available to all staff and inmates who wish to receive it, and inmates are regularly being vaccinated. See id. The BOP reports that 1,554 inmates at FCI Carswell, where Defendant is housed, have been fully vaccinated against COVID-19. Id. The Court has not been presented with evidence of an uncontrolled outbreak at that facility, and even if it had, the medical conditions and other circumstances Defendant

11

describes, considered individually or collectively, do not warrant immediate release due to COVID-19.  See Raia, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); United States v. Melgarejo, Case No. 12-CR-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("The Court does not seek to minimize the risks that COVID-19 poses to inmates in the BOP.  But the mere presence of COVID-19 in a particular prison (or in the BOP generally) cannot justify compassionate release—if it could, every inmate in that prison could obtain release."), aff'd, 830 F. App'x 776 (7th Cir. 2020) (unpublished mem.).  Accord United States v. Broadfield, 5 F.4th 801, 802–03 (7th Cir. 2021) ("Vaccinated prisoners are not at greater risk of COVID-19 than other vaccinated persons.  (A more cautious statement would be that published data do not establish or imply an incremental risk for prisoners—either a risk of contracting the disease after vaccination or a risk of a severe outcome if a vaccinated person does contract the disease.)  And a prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release.  The risk is self-incurred.").

The Court commends Defendant for receiving few disciplinary reports, completing numerous programs, and receiving certifications during her current incarceration.  However, Defendant's rehabilitative efforts do not constitute extraordinary and compelling reasons for release.  See, e.g., United States v. Engles, 790 F. App'x 961, 962 (10th Cir. 2020) (unpublished order) (affirming the denial of a § 3582(c)(1)(A) motion for sentence reduction where the defendant's proffered extraordinary and compelling reasons—if he were sentenced today for the same offenses, his sentence would be substantially less; and his post-sentencing rehabilitation efforts—were without merit because, if calculated today, the defendant's sentencing guidelines would exceed the sentence imposed and because the defendant's post-sentencing rehabilitation effort was not "by itself, an extraordinary and compelling reason" for a sentence reduction

(quoting U.S.S.G. Manual § 1B1.13, cmt. n.3 (2018))); United States v. Simmons, Case No. 12-cr-219-T-27, 2020 WL 3001380, at *2 (M.D. Fla. June 4, 2020) (denying the defendant's motion for compassionate release, finding his uncorroborated medical conditions did not qualify as extraordinary and compelling under § 1B1.13 and that "while [the defendant's] rehabilitation efforts [we]re admirable, rehabilitation alone is insufficient to release" (citing 28 U.S.C. § 994(t))).

Defendant's medical conditions and rehabilitative efforts, considered alone or in combination, do not constitute extraordinary and compelling reasons justifying early release. See Marcussen, 15 F.4th at 858 (affirming the denial of a motion for compassionate release of a defendant suffering from medical conditions, including (well-controlled) chronic obstructive pulmonary disease (COPD) and hypertension, and obesity, reasoning whether a sentence reduction is warranted under § 3582(c)(1)(A) "requires an individualized inquiry, not a widespread release of inmates based on the existence of a persistent worldwide pandemic" and although "certainly relevant, the threat of contracting COVID-19 in the prison environment, still real at this time, is not by itself sufficient reason to modify a lawfully imposed prison sentence"); United States v. Roney, 10-CR-130S, 2020 WL 2846946, at *5-6 (W.D.N.Y. June 2, 2020) (finding the 61-year-old, wheelchair-bound defendant's medical conditions—Type II diabetes, obstructive sleep apnea, hypertension, serious heart conditions, asthma, and cirrhosis—while serious, did "not constitute extraordinary and compelling reasons for a sentence reduction," reasoning that "the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme," and even if the defendant had demonstrated extraordinary and compelling reasons, those reasons were outweighed by consideration of the § 3553(a) factors and a reduction would undermine the defendant's original sentence), aff'd, 833 F. App'x 850; Riley v. United States, CASE NOS. C19-1522, CR14-0113, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10,

13

2020) (denying the motion for compassionate release of a 51-year-old defendant suffering from HIV/AIDS and prostate cancer, reasoning "§ 3582(c)(1) does not authorize the court to release an inmate prophylactically on the mere possibility that he may contract a virus or to modify his sentence based on the mere existence of COVID-19. There may be factual circumstances involving COVID-19 in a prison or other detention facility that would warrant the modification of an inmate's sentence under § 3582(c)(1), but those circumstances are not presently before this court"), appeal dismissed, No. 20-35334 (9th Cir. Jan. 15, 2021).

### 3. Consistent with Policy Statements Issued by the Sentencing Commission

The second statutory factor the Court must consider in determining whether a sentence reduction is warranted is whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" Ruffin, 978 F.3d at 1005 (alteration in original) (quoting § 3582(c)(1)(A)). That is, the Court must determine that "[t]he defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)." Id. (quoting § 1B1.13(2)-(3)); see United States v. Lugo, 832 F. App'x 799, 800 (3d Cir. 2021) (unpublished per curiam) (rejecting the defendant's challenge that the district court improperly weighed factors in determining he was a danger to his community, including the serious nature of his current conviction, his criminal history, and his conduct while incarcerated, reasoning "consideration of whether [the defendant] is a danger to the community is relevant to evaluating whether granting compassionate release under § 3582(c)(1)(A) is consistent with Sentencing Commission policy" (citing § 3142(g))).

Defendant asserts various programs in which she has participated and her good disciplinary record while incarcerated demonstrate she is not a danger to the community. While Defendant's improvements are laudable, the Court cannot disregard Defendant's past conduct that led to her current incarceration. Defendant was involved in unusually egregious criminal activity both in the nature of the crime and the manner in which she operated. She was on probation from other offenses at the time of this offense. Despite knowing she was under investigation, she continued

14

with the offense conduct until arrested. Under the circumstances of this case, the Court cannot conclude Defendant is not a danger to the safety of the community. See United States v. Jackson, 847 F. App'x 792, 796–97 (11th Cir. 2021) (unpublished per curiam) (finding the district court properly took into account factors including the defendant's relatively young age, his prior convictions for aggravated assault on police officers, and aggravated felony fleeing, in determining that the defendant may be a danger to the community if released and posed a substantial risk of recidivism); United States v. Iglesias, CRIMINAL ACTION NO. 04-00647, 2021 WL 183306, at *4 (E.D. Pa. Jan. 19, 2021) ("[The defendant]'s release is also unjustified because despite his claims to the contrary, he remains a danger to the community. His rehabilitative efforts and improved behavior in prison are commendable, but they do not enable the Court to disregard or minimize his past. Aging has had no demonstrated effect on [the defendant]'s propensity to recidivate—prior to his incarceration, his wrongdoing escalated and 'accelerated with age.' Moreover, his family support has not historically hindered his criminal activity and supervised release will not sufficiently protect the public from future crimes he may commit." (citations omitted)), appeal dismissed, No. 21-1144 (3d Cir. Mar. 3, 2021).

### 4. § 3553(a) Factors

The third and final statutory factor for consideration of a sentence reduction is the Court's consideration of the § 3553(a) factors. See Ruffin, 978 F.3d at 1005. "Even if a district court finds that extraordinary and compelling reasons exist and that a sentence reduction comports with [the applicable policy statements], the court may not grant the reduction before 'considering the factors set forth in section 3553(a) to the extent that they are applicable[.]'" Id. (second alteration in original) (quoting 18 U.S.C. § 3582(c)(1)(A)). "This last requirement confirms an overarching point: The district court has substantial discretion. The statute says that the district court 'may' reduce a sentence if it finds the first two requirements met; it does not say that the district court must do so." Id.; see United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020) (noting that the district court first determined whether the defendant had demonstrated an

15

extraordinary and compelling reason for a sentence reduction and *then* applied § 3553(a) factors in determining whether a sentence reduction was warranted).

The Government argues Defendant remains a danger to the community and the § 3553(a) factors weigh against release. Even assuming the first two statutory factors for sentence reduction under § 3582(c)(1) had been met—that is, Defendant presented an extraordinary and compelling reason and the Court found she did not pose a danger to the safety of other persons or to the community—consideration of the § 3553(a) factors in the present case weigh against Defendant's release.

At sentencing, the Court calculated a U.S.S.G. range of 168 to 210 months' imprisonment based on a total offense level 33, and a criminal history Category III. The Court then considered the § 3553(a) factors in determining the appropriate sentence to impose. This case arose from extremely serious criminal conduct involving not only prostitution and harsh coercion of young women to participate, but also included violence and elements of slavery. Defendant was on probation at the time of the offense and continued the criminal enterprise despite knowledge she was under investigation by law enforcement. At sentencing the Court noted the "damage done in this case is staggering." Sent'g Tr. 129, ECF No. 195. After considering the seriousness of Defendant's offense, her criminal history, deterrence to criminal conduct, protection to the public from further crimes, the need to avoid unwarranted sentencing disparity, as well as mitigating factors, the Court concluded that under the unique circumstances of this case, the appropriate sentence was a term of 210 months' imprisonment at the top of the Guidelines range.

The Court has closely reviewed the record, the parties' arguments, and the relevant § 3553(a) factors. See Rodd, 966 F.3d at 748 ("When considering the § 3553(a) factors, a district court is not required to make specific findings; all that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors." (quoting United States v. Thompson, 641 F. App'x 641, 650 (8th Cir. 2016) (unpublished per curiam))). Defendant is only 44 years old and has served approximately 141 months or roughly 67% of her

16

210-month sentence. Even assuming that due to risks related to COVID-19, Defendant's medical conditions constitute an extraordinary and compelling reason, upon consideration of the § 3553(a) factors, the Court finds the 210-month term of imprisonment continues to reflect the seriousness of Defendant's offense, her criminal history, deterrence to criminal conduct, protection to the public from further crimes, and the need to avoid unwarranted sentencing disparity. See Marcussen, 15 F.4th at 859 ("The court acknowledged these [mitigating § 3553] factors but found they did not justify [the defendant]'s release. There was no abuse of discretion. That other district courts may have granted compassionate release for defendants with similar backgrounds does not demonstrate an abuse of discretion."); Rodd, 966 F.3d at 745 (holding the district court did not abuse its discretion where it assumed the defendant satisfied the "'extraordinary and compelling reasons' criteria set forth in § 1B1.13," but upon review of the § 3553(a) factors present at sentencing, found nothing had changed and denied early release); Chambliss, 948 F.3d at 693–94 (finding no abuse of discretion in denying compassionate release, reasoning the district "court first acknowledged that [the defendant]'s terminal disease constitutes an extraordinary and compelling reason for a sentence reduction and that he d[id] not present a danger upon release," but in applying the § 3553(a) factors, concluded that releasing the defendant after only 14 years of his 30-year sentence minimized his crime and the seriousness of his offense (internal quotation marks omitted)); United States v. Kincaid, 802 F. App'x 187, 188–89 (6th Cir. 2020) (unpublished order) (finding no abuse of discretion in denying compassionate release, reasoning that although there was no dispute the defendant's terminal diagnosis of metastatic liver cancer constituted an extraordinary and compelling reason and the defendant did not pose a danger, the district court properly weighed the § 3553(a) factors—the (short) amount of time defendant had served, the defendant's age and health, avoiding unwarranted sentencing disparities, and the defendant's involvement in distributing over 1.6 million Roxicodone pills—in concluding a reduction of sentence was not warranted); United States v. Lowman, CRIMINAL ACTION NO. 09-CR-00049-1, 2020 WL 3472923, at *5 (W.D.N.C. June

25, 2020) ("The Court need not determine the severity of Defendant's asthma because even if extraordinary and compelling reasons exist, the analysis under Section 3553(a) counsels against a reduction in his sentence."). For the reasons stated, Defendant has not met her burden of showing a sentence reduction is warranted under § 3582(c). See generally United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Mork, Case No. 17-cr-176, 2020 WL 3026647, at *3 (D. Minn. June 5, 2020) ("As the movant, defendant moreover carries the burden to show he is entitled to a sentence reduction." (citation and quotation marks omitted)).

**C. CARES Act**

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5210–12, revised provisions of the Second Chance Act of 2007, 18 U.S.C. § 3624(c)(1)-(2), which outline a defendant's early release to a residential reentry program (halfway house) or to home confinement.[3] In response to emergency conditions caused by COVID-19, Congress passed the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). Section 12003 of the CARES Act provides:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

---

[3] The relevant provisions of the Second Chance Act, as amended, state:

(1) In general. The Director of the [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
(2) Home confinement authority. The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

Id. at 516.[4] On March 26, 2020, then-Attorney General William Barr issued a memorandum to the Director of the Bureau of Prisons instructing that "when assessing compassionate release applications, to prioritize the transfer of incarcerated inmates to home confinement 'where appropriate' to decrease the risks to their health." Memorandum for Director of Bureau [of] Prisons from the Attorney General, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (March 26, 2020), accessed at https://www.justice.gov/file/1262731/download. The factors to be considered are the age and vulnerability of the inmate; the security level of the facility where the inmate resides, with priority given to those residing in low and medium security facilities; the inmate's conduct in prison; whether the inmate has a verifiable re-entry plan that would prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face at his/her BOP facility; the inmate's crime of conviction; and assessment of the danger posed by the inmate to the community.

On April 3, 2020, exercising his emergency authority under the CARES Act, then-Attorney General Barr issued a second memorandum to the Director of the Bureau of Prisons with directions to expand the use of home confinement. See Memorandum for Director of Bureau of Prisons from the Attorney General, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), accessed at https://www.justice.gov/file/1266661/download. Identifying BOP facilities with "significant levels of infection"—FCI Oakdale, Louisiana; FCI Danbury, Connecticut; and FCI Elkton, Ohio—the Attorney General charged the BOP to move with "dispatch in using home confinement, where appropriate, to move vulnerable

---

[4] The CARES Act defines the "covered emergency period" as "beginning on the date on which the President declared a national emergency under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID-19) and ending on the date that is 30 days after the date on which the national emergency declaration terminates." CARES Act, Pub. L. No. 116-136, 134 Stat. 281, 516.

inmates out of these institutions" and to "give priority to these institutions, and others similarly affected, as you continue to process the remaining inmates who are eligible for home confinement under pre-CARES Act standards." Id.

The CARES Act did not alter the exclusivity of the BOP's authority to determine placement of prisoners, including placement in a halfway house or home confinement, see § 3624(c); rather, it granted the Attorney General emergency authority to alter the function of the BOP during the COVID-19 pandemic, which he exercised by charging *the BOP* with moving vulnerable inmates out of institutions significantly affected by COVID-19. Nothing in the CARES Act granted U.S. District Courts authority to determine the placement of prisoners. See Houck, 2 F.4th at 1085 ("Because [the CARES Act] give[s] authority to place a prisoner in home confinement to the Director of the BOP, not the district court, the district court correctly held that it did not have authority to change [the defendant]'s place of imprisonment to home confinement under § 3624(c)(2).").[5]

## III.   CONCLUSION

For the reasons provided, Defendant's Motion for Release, ECF No. 330, must be **denied**.

**IT IS SO ORDERED.**

Dated this 7th day of April, 2022.

JAMES E. GRITZNER, Senior Judge
U.S. DISTRICT COURT

---

[5] Construing Defendant's request as a challenge to a term of confinement under 28 U.S.C. § 2241 would not change this result. "A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP. . . . If the BOP were to deny [Defendant]'s request, he could then seek review of the BOP's decision by filing a petition for writ of habeas corpus under § 2241 in the appropriate district court." Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009). This is not the proper district to file a § 2241 petition as those petitions must be filed in the district where the prisoner is serving his sentence. Id.